CAR CONNECTION, INC.,              )
                                   )        Davidson Circuit
          Plaintiff/Appellee,      )        No.  96C-2107
                                   )
VS.                                )
                                   )
AUTO BUYERS, INC.,                 )        Appeal No.
                                   )        01A01-9707-CV-00301
          Defendant/Appellant.     )


IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

FILED

May 6, 1998

Cecil W. Crowson
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

HONORABLE BARBARA N. HAYNES, JUDGE


Phillip C. Kelly, BOPR #2382
Gwynn K. Smith, BOPR #368
125 Public Square
Gallatin, Tennessee 37066
ATTORNEYS FOR PLAINTIFF/APPELLEE


Joel E. Jordan, #4047
STELTEMEIER & WESTBROOK
2002 Richard Jones Road, C-101
P.O. Box 150349
Nashville, Tennessee 37215-0349
ATTORNEY FOR DEFENDANT/APPELLANT


AFFIRMED AND REMANDED.


                    HENRY F. TODD
                    PRESIDING JUDGE, MIDDLE SECTION


CONCUR:

BEN H. CANTRELL, JUDGE
WILLIAM C. KOCH, JR., JUDGE

| CAR CONNECTION, INC., | ) | |
| --- | --- | --- |
| | ) | **Davidson Circuit** |
| Plaintiff/Appellee, | ) | **No. 96C-2107** |
| | ) | |
| VS. | ) | |
| | ) | |
| AUTO BUYERS, INC., | ) | **Appeal No.** |
| | ) | **01A01-9707-CV-00301** |
| Defendant/Appellant. | ) | |

# **O P I N I O N**

This suit was filed in General Sessions Court to collect a dishonored check, but was appealed to the Circuit Court where a complaint was filed stating more details of transactions involving the transfer of ownership of two automobiles, a Honda and a Chevrolet.

The Trial Court entered summary judgment against defendant who appealed.

The parties are corporations which are licensed automobile dealers. Licensed salesmen are affiliated with the dealers and participate in transactions of the dealers and the profits therefrom.

The following are applicable statutes regulating automobile dealers and salespersons:

T.C.A. § 55-17-102(16) reads as follows:

> Motor vehicle salesperson means any person not excluded by subdivision (17) employed by a licensed motor vehicle dealer who is engaged in the business of effecting or attempting to effect the sale or purchase of motor vehicles owned by some other person to residents of the state of Tennessee, for which service some form of remuneration is expected, whether it be designated as a salary, fee, commission, rental or otherwise, and regardless of whether such remuneration is paid by the buyer, seller or a third party.

T.C.A. §§ 55-17-110(d) & (e) provide:

> (d) No motor vehicle salesperson shall sell or attempt to sell any motor vehicle for any motor vehicle dealer unless the motor vehicle salesperson is employed by the motor vehicle dealer having an interest in the sale of the motor vehicle.

(e) No person licensed hereunder shall give, pay or in any manner compensate any other person for services rendered as a motor vehicle salesperson without first engaging or employing such person in the capacity of a motor vehicle salesperson.

T.C.A. §§ 55-17-113 ( c) & (h) provide:

( c) Every motor vehicle salesperson, factory representative or distributor representative shall have such license in such person's possession when engaged in business and shall display it upon request. The name of the employer of the motor vehicle salesperson, factory representative or distributor representative shall appear on the face of the license.

(h) When a motor vehicle salesperson desires to change employment from one dealer to another, that salesperson must submit such person's license to the commission for endorsement of change of employer prior to again engaging in business as a salesperson

T.C.A. § 55-17-109(a)(1) provides:

It is unlawful for any person to engage in business as, or serve in the capacity of, or act as a manufacturer, distributor, factory branch, distributor branch, factory representative, distributor representative, motor vehicle dealer, motor vehicle salesperson or automobile auction without first obtaining a license as required in this chapter.

In the present case, Neville Neal was the participating salesperson licensed and connected with the defendant, Auto Buyers, Inc. and Bill Roberts was the licensed participating salesperson connected with plaintiff, Car Connection, Inc.. The plaintiff and defendant are licensed dealers under the above statutes.

The terms of the agreements between the licensed corporations and the subject salespersons are not clearly shown by this record which is abbreviated by designation. The deposition of Bill Roberts identifies a written contract between himself and the corporate plaintiff as exhibit 10. However, this exhibit was not designated for inclusion in the record on appeal. The oral testimony is conflicting as to the terms of the contracts between the corporate parties and their affiliated salespersons.

In October, 1995, Roberts agreed to sell and Neal agreed to buy the Chevrolet for $14,500.00 and the Honda for $11,150.00. Roberts signed for plaintiff on the title transfers, and Neal signed the invoices representing the sale. Both vehicles were delivered to defendant; and, on November 7, 1995, defendant issued a check to plaintiff for $25,650.00, the price of the two vehicles.

Thereafter, defendant decided that the price of the Honda was too high, stopped payment on both checks and returned the vehicles to the premises of plaintiff. After efforts to collect the check failed, plaintiff sold both vehicles at auction for a total of $18,575.00.

The affidavits introduced by the parties show without dispute that the corporate parties permit the two named salespersons to engage in buying and selling vehicles in the "wholesale market", that is, sales between dealers, and that the corporate parties "finance" such transactions by advancing the funds to purchase the vehicles, and retaining possession of the vehicle and the title certificate of the purchased vehicles to secure the loan.

The record contains two invoices on the printed forms of corporate plaintiff showing sales of a 1992 Chevrolet, priced at $14,500.00 and a 1991 Honda, priced at $11,150.00, to the corporate defendant, and dated October 5, 1995. The signature "N. Neal" appears in the spaces marked for "Buyer or Transferee's Signature" on the invoices.

On November 15, 1995, payment of defendant's $25,650.00 check was refused by the bank on which drawn with the notation "Stop Payment." The two vehicles were returned to the premises of the corporate plaintiff.

On January 23, 1996, the corporate plaintiff sued the corporate defendant in General Sessions Court for breach of contract claiming $7198.00 damages.

On appeal to the Circuit Court, the corporate plaintiff filed an "amended complaint" alleging the above recited facts.

The corporate defendant filed an answer containing the following defenses:

- Neville Neal is not an employee of Auto Buyers, Inc.

- Defendant demands strict proof of the position of Bill Roberts and the activities of Neville Neal.

- Defendant denies that it purchased the vehicles in question.

- Defendant admits issuance and stoppage of payment of the check because Neville agreed to pay too much for the vehicles and asserts that it "furnished inventory financing" to Neal.

Plaintiff moved for summary judgment supported by affidavits of the above stated facts. Defendant's response relies upon the same facts, except that it characterizes the transaction as one between Neal and Roberts in which defendant was only the financing agency.

The Trial Court granted summary judgment without a memorandum opinion.

On appeal, the corporate defendant states the issues as follows:

1. Whether or not Neville Neal was the agent of the Appellant.

2. Whether or not the Appellee suffered any damages as a result of the Appellant's alleged breach of contract.

3. Whether or not there are genuine issues of material fact that render summary judgment inappropriate.

Appellant insists that in addition to his activities in buying and selling vehicles belonging to appellant, Neville Neal engaged in buying and selling vehicles in the wholesale market for his own account, and that in the subject transactions, Neal was dealing for himself and not for appellant.

Appellant further insists that it assisted Neal in his wholesale speculation by "financing his deals," that it loaned Neal the money to buy vehicles for himself and secured the loan by holding the title certificate and possession of the vehicle.

There is testimony supporting this course of dealing; but the existence of such a course of dealing does not affect the liability of defendant corporation upon its dishonored check.

T.C.A. § 47-3-414(b) provides:

If an unaccepted draft is dishonored, the drawer is obligated to pay the draft in accordance with its terms at the time it was issued . . . .

A check is a draft. The signer of the check is the drawer. The check was given for a valid consideration without any fraud or misrepresentation. The check was dishonored upon the instruction of the defendant-drawer. Therefore, the defendant-drawer is unconditionally liable to the plaintiff-holder upon the check. Any question of "who loses" must be resolved between appellant and its salesperson under the terms of their business relationship.

The defense of Mr. Neal's independent speculation is ineffective because such speculation in the wholesale market by a salesperson is not authorized by the salesperson's license and is therefore illegal.

Since the plaintiff-seller saw fit to mitigate the liability of the defendant upon its dishonored check, the deduction of the proceeds of such sale from the amount due upon the dishonored check was proper.

The judgment of the Trial Court is affirmed.  Costs of this appeal are taxed against the appellant and its surety.  The cause is remanded to the Trial Court for further necessary proceedings.

**AFFIRMED AND REMANDED.**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:


_____
BEN H. CANTRELL, JUDGE


_____
WILLIAM C. KOCH, JR., JUDGE